UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

--------------------------------------------------------X

In re

Chapter 7

ANJANIE NARINE,

Case No. 22-40269-jmm

                     Debtor.

--------------------------------------------------------X

ANJANIE NARINE,

                     Plaintiff,

      v.

Adv. No. 22-01029-jmm

UNITED STATES OF AMERICA, *et al.,*

                     Defendant.

--------------------------------------------------------X

## MEMORANDUM DECISISON GRANTING DEFENDANT UNITED STATES OF AMERICA'S MOTION FOR SUMMARY JUDGMENT

DAVID A. HUBBERT
Deputy Assistant Attorney General
U.S. Department of Justice, Tax Division

DANIEL M. CAVES
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 55
Washington, D.C. 20044

*Attorneys for Defendant United States of America*

RACHEL S. BLUMENFELD
Law Office of Rachel S. Blumenfeld
26 Court Street, Suite 2220 Brooklyn, NY 11242

*Attorney for Plaintiff Anjanie Narine*

**INTRODUCTION**

Anjanie Narine, the Plaintiff in this adversary proceeding, owes over $40,000 to Defendant United States of America for unpaid taxes and related penalties and interest. The debt stems from Plaintiff's failure to report over $90,000 of capital gains on her 2017 tax return. Plaintiff commenced this adversary proceeding to obtain a judgment that the indebtedness is dishchargeable. Defendant moved for summary judgment that the indebtedness is nondischargeable under 11 U.S.C. § 523(a)(1)(C) because the Plaintiff willfully attempted to evade or defeat the taxes owed. For the reasons set forth below, Defendant's motion for summary judgment is granted.

**JURISDICTION**

The Court has jurisdiction over this adversary proceeding under 28 U.S.C. § 1334(b), 28 U.S.C. § 157(a), and the Standing Order of Reference entered by the United States District Court for the Eastern District of New York dated August 28, 1986, as amended by the Order dated December 5, 2012. The Court may hear and determine this adversary proceeding because it is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I). This decision constitutes the Court's findings of fact and conclusions of law to the extent required by Rule 7052 of the Federal Rules of Bankruptcy Procedure.

**PROCEDURAL HISTORY**

Plaintiff filed a petition for relief under chapter 7, title 11 of the United States Code on February 15, 2022. *In re Narine*, Case No. 22-40269, ECF 1. On April 26, 2022, Plaintiff filed a complaint commencing this adversary proceeding. Comp., ECF 1. On June 9, 2022, Defendant New York State Department of Taxation and Finance answered the Complaint. Answer, ECF 4. On July 11, 2022, Defendant United States of America Internal Revenue Service ("Defendant")

answered the complaint.  Answer, ECF 8.  On September 1, 2023, Defendant filed its motion for summary judgment.  Def.'s Mot. Summ. J., ECF 19.  On January 7, 2024, Plaintiff filed her objection to the motion for summary judgment.  Def. [sic] Anjanie Narine's Ver. Resp. Opp'n Def. Mot. Summ. J. (hereinafter, "Pl. Opp'n"), ECF 25.  On February 9, 2024, Defendant filed its reply.  Def. United States of America Reply to Debtor's Opp. To Summ. J. (hereinafter, "Def. Reply"), ECF 27, 28.

The Court held oral argument on the motion on April 18, 2024.

## BACKGROUND

Plaintiff's Personal Background

Plaintiff was born in 1976.  Def. United States of America's Rule 7056-1 Statement of Material Facts (hereinafter, "Def. Statement of Material Facts") ¶ 2, ECF 19-2.  She has one daughter who was born in 2006.  *Id.* at ¶ 4.  Plaintiff suffered childhood trauma and was diagnosed with dissociative identity disorder.  Pl. Opp'n ¶ 7.

Plaintiff went to college at night and received a Bachelors of Business Administration in Economics from Pace University in January 2000.  Dep. Anjanie Narino (hereinafter "Tr.") 37:6–12; 42:1–3.  In 1994, while at Pace University, Plaintiff worked part time at the accounting firm of Levine & Seltzer.  Tr. 48:5–9.  While there, Plaintiff formed a friendship with one of the firm's partners, Philip Seltzer, CPA.  Def. Statement of Material Facts ¶ 3.  Mr. Seltzer prepared the Plaintiff's tax returns through 2016 (*i.e.*, the 2015 tax year).  Tr. 49:5–10; 49:24–50:5.  In 2016, the Plaintiff and Mr. Seltzer had a falling out and they did not speak again until 2020.  Tr. 49:6–19.  As set forth more fully below, Mr. Seltzer provided some tax assistance to the Plaintiff in 2020; however, the Plaintiff and Mr. Seltzer have not communicated since 2021.  Tr. 50:20–23.

Thereafter, Plaintiff worked as an executive assistant at different financial firms, including Morgan Stanley, Bank Boston, and UBS. Tr. 43:21–23. Her duties progressed from clerical duties to managing her employer's calendars and other aspects of her employer's lives. Tr. 44:4–10. Due to Plaintiff's mental illness, she has poor interpersonal skills and has been laid off or let go from almost every job she has had. Tr. 43:8–15. She has gone through approximately 20 different jobs. Tr. 43:17–18. In January 2023, Plaintiff stopped working altogether. Tr. 44:18–22.

While working as an executive assistant at the different financial firms, Plaintiff learned how to trade securities. Tr. 45:2–16, 20–22. Plaintiff started trading securities in or around 2013. Tr. 46:2–7. In 2017, Plaintiff lost her job and started day trading securities using her own cash and retirement funds. Tr. 47:1–8.

Facts Related to Plaintiff's Tax Liability

From at least 2016 and until January 31, 2019, Plaintiff held accounts with Vanguard Brokerage Services including an individual brokerage account and a traditional IRA brokerage account. Def. Statement of Material Facts ¶ 6; Tr. 173:20–174:23.

In the early months of 2017, Plaintiff sold the following stocks from her Vanguard brokerage account on the dates and in the amounts listed below:

| Date | Stock | Number of Shares | Total Proceeds | Original Cost | Net gain |
|------|-------|------------------|----------------|---------------|----------|
| 01/27/2017 | Tesla, Inc. | 113 | $28,417 | $21,816 | $ 6,601.81 |
| 01/27/2017 | Tesla, Inc. | 625 | $157.178.14 | $107,849.00 | 49,239.59 |
| 02/01/2017 | Apple, Inc. | 1,010.413 | $130,333.44 | $93,349.99 | 36,983.45 |
| **Total** | | | | | **$92,824.85**[1] |

Def. Statement of Material Facts ¶ 7; Tr. 100:3–20.

---

[1] Defendant claims the total net gain is $92,914 but that appears to be an arithmetic error.

Prior to preparing her 2017 tax return, Plaintiff received Forms 1099 reporting the capital gains described in above chart, as well as $2,427 in dividends from the same Vanguard account. Def. Statement of Material Facts ¶ 16. The gains and dividends were reported on a year-end tax information statement from Vanguard. *Id.*

Plaintiff self-prepared her 2017 federal income tax return using an online program called E-file.com. Def. Statement of Material Facts ¶ 15; Tr. 93:21–95:25. Plaintiff followed on-screen prompts to enter information into her tax return. Def. Statement of Material Facts ¶ 15; Tr. 96:1–4. Plaintiff followed an on-screen prompt to enter the $2,427 of dividends reported on her Vanguard year-end statement into the *Schedule B, Interest and Ordinary Dividends* of her 2017 tax return. Def. Statement of Material Facts ¶ 17; Tr. 96:5–17. She followed on-screen prompts to complete various other lines, forms, and schedules on her 2017 tax return. *Id.*

Plaintiff reported an adjusted gross income of $85,152 and reported that she was due a refund of $8,449. Def. Statement of Material Facts ¶ 15; Tax Return Summary at 2–3, Def. Statement Material Facts, Ex. 4, ECF 19–7. She filed the return on June 4, 2018. *Id.* The IRS credited (offset) $5,227.46 to an outstanding unpaid liability for tax year 2015 and refunded $3,221.54. *Id.*

Plaintiff did not report the $92,914 in capital gains reported on her Vanguard year-end statement on her 2017 tax return. Def. Statement of Material Facts ¶ 18; Tr. 100:18–101:10. Plaintiff testified at her deposition that she did not recall seeing a prompt for capital gains and losses and that her failure to report them was a mistake. *Id.*; Tr. 100:21–101:4. She does not dispute that taxes on the capital gains are due. Tr. 101:6–10.

Plaintiff also over-reported her health savings account contribution for 2017, reporting $761 in contributions while a third-party report showed only $125. Def. Statement of Material

Facts ¶ 19; Tr. 105:19–24.

On April 15, 2019, the Defendant mailed a CP2000 notice to Plaintiff, which proposed changes to her 2017 tax liability. Def. Statement of Material Facts ¶ 20. It notified her that she had underreported her 2017 income by $93,550 due to the unreported capital gains and the misreported health savings account contribution. *Id.* The notice informed her that she would be liable for an additional $23,801 in federal income tax. The notice also informed her that she would be liable for a tax understatement penalty of $4,760, a failure-to-file penalty of $1,535, and accrued interest of $1,755. *Id.* The proposed amount due as of the notice date was $31,851. *Id.*

On July 8, 2019, the IRS sent Plaintiff a CP3219A, *Statutory Notice of Deficiency*. Def. Statement of Material Facts ¶ 21. It informed Plaintiff of her right to challenge the deficiency with the U.S. Tax Court within 90 days if she disagreed, or if she agreed, to pay immediately or to receive a bill. *Id.* It also informed her that if she did not respond or petition the Tax Court, that the IRS would assess the additional tax, penalties, and interest and send a bill demanding payment. *Id.* On October 1, 2019, Plaintiff consented to the assessment and collection of the deficiency. Def. Statement of Material Facts ¶ 22. Also, in October 2019, Plaintiff contacted the IRS and inquired about an installment agreement for her 2017 tax liability, but the IRS requested that she file her 2018 tax return first. Def. Statement of Material Facts ¶ 23. Plaintiff recalls being in talks with the IRS and that the talks stalled, but does not recall other details. Tr. 110:11–13. Plaintiff did not obtain a payment plan and then started to receive deficiency notices. Tr. 110:1–5, 13–16. On November 11, 2019, the IRS assessed the 2017 liability and sent a notice and demand for payment. Def. Statement of Material Facts ¶ 25. The IRS sent Plaintiff two delinquency notices informing her that she needed to file a tax return for 2018: one in

6

December 2019, and another in February 2020.   Def. Statement of Material Facts ¶ 24. Plaintiff

did not file her 2018 tax return until March 2020.  On January 20, 2020, the IRS sent Plaintiff a

CP504, *Statutory Notice of Intent to Levy*.  Def. Statement of Material Facts ¶ 25.

In 2020, Plaintiff told Mr. Seltzer about the tax issues and inquired whether she could

carry back stock trading losses incurred after 2017 to offset the gains that generated the tax debt.

Tr. 51:12–13; 52:5–20.  The Plaintiff claims Mr. Seltzer offered to look at her taxes.  Tr. 52:1–8.

The Plaintiff sent Mr. Seltzer her tax returns for 2016, 2017, 2018 and 2019.  Tr. 57:25–58:2.  At

some point, Mr. Seltzer emailed Plaintiff and informed her that "the Schedule C loss could be an

issue (should be a capital loss-not an ordinary loss) – and then you're back to square 1 with

respect to 2017 and no Net Operating Loss Carryback refunds."  Tr. 59:22–60:1.  Plaintiff

interpreted that to mean that there could be an issue using the net operating loss carryback but it

was not certain the IRS would object to the loss carryback.  Tr. 60:18–23.  The Plaintiff testified

that Mr. Seltzer did not prepare her amended 2017 return but was on the phone with her advising

her how to amend the tax returns, then Mr. Seltzer created the amended returns and sent

signature pages to the Plaintiff.   Tr. 53:10–17; 62:4–16; 63:24–64:12.  Subsequently, the

Plaintiff signed the pages and dropped them off at Mr. Seltzer's apartment building.  Tr. 53:13–

17.  The Plaintiff claims she learned only recently that the amended returns had not been filed.

Tr. 64:15–19.  The Plaintiff has not heard from Mr. Seltzer since before October 2022 and the

last conversation Plaintiff had with Mr. Seltzer was in October 2021.  Tr. 69:9–11.  Plaintiff

believes Mr. Seltzer stopped communicating with her because Plaintiff learned Mr. Seltzer failed

to file the amended returns.  Tr: 68:17–21.  Plaintiff has not worked with any other accountants

on her tax returns.  Tr.  69:22–25.

Plaintiff had concerns about Mr. Seltzer's well-being, stating "I had gone to his

apartment . . . and he had mountains of mail – like, probably two years' worth of mail – that had piled up on his table in his living room." Tr. 53:24–54:3. The Plaintiff recalled Mr. Seltzer telling her that "I get so much junk mail and I get so many statements . . . I don't want to open them; I don't want to go through them. So every day when the mail comes, I just throw them in this pile." Tr. 54:5–11. Plaintiff was aware that Mr. Seltzer had severe depression and would "sometimes go weeks, you know, locking himself away." Tr. 69:2–4.

Plaintiff's Discretionary Spending and Assets

On July 8, 2019 (approximately three months after Defendant mailed the CP2000 notice), Plaintiff withdrew over $2,000 from ATMs at Bally's Atlantic City and on July 15, 2019, she withdrew approximately $560 from an ATM in Spain. *See* Chase Statement Acct. No. ending 8950, ECF 19–13. Also, on July 10, 2019, the Plaintiff paid off $7,000 of credit card debt. *Id*.

In October 2019, the Plaintiff received $15,000 of loan proceeds from Marcus by Goldman Sachs and $16,500 from Barclaycard US. *See* Chase Statement Acct. No. ending 8950, ECF 19–13. The Plaintiff did not use the loan proceeds to pay the outstanding taxes. Instead, Plaintiff used the money for day trading stocks. Tr. 169:2–8.

As of December 31, 2019, the fair market value of the Plaintiff's IRA portfolio was $344,493.24. 2019 IRA Contribution Information Form 5498, ECF 19–14. As of December 31, 2020, the fair market value of the Plaintiff's IRA portfolio was $306,184.74. 2021 IRA Contribution Information Form 5498, ECF 19–14. As of December 31, 2021, the fair market value of the Plaintiff's IRA portfolio was $1,087,116. *Id*. The increase in value was due to the rise in the price of securities in the account. Tr. 182:16–183:2. In 2021, the Plaintiff distributed $96,000 from her Fidelity IRA account. Tr. 183:19–24. It appears Plaintiff used the money to

make stock trades, suffered some losses and, within sixty days, deposited $89,000 back into the Fidelity IRA account to avoid having to pay tax on the full distribution.  Tr. 184:3–10.

In or about 2019, the Plaintiff's teen-aged daughter's interest in climate change prompted the Plaintiff to start a business selling bracelets to raise awareness.  Tr. 70:3–21.  In November or December 2019, the Plaintiff took a two-week trip to China and spent $10,000 on goods to start the bracelet business.  Tr. 129:10–25.  Also, in 2019, the Plaintiff travelled to Brazil to locate a specific type of jewelry that she could also sell as part of her business.  Tr. 131:13–132:24.  The Plaintiff sold only approximately $250 worth of bracelets; however, the Plaintiff explained the business was not to sell bracelets but for the "bigger purpose" of generating climate change awareness.  Tr. 70:12–71:4; 73:6–9.  The Plaintiff made additional donations to organizations committed to fighting climate change.  Tr. 73:11–25.

Plaintiff took the following trips from July 2019 to December 2021:

| Location | Time Period | Record Citation |
|---|---|---|
| Spain | July–August 2019 | Tr. 135:1–136:21; Ex. 10 at 178–182. |
| Dominican Republic | August 2020 | Tr. 137:6–137:12, 140:7–141:20; Ex. 10 at 266. |
| Los Angeles, California | December 2020 | Tr. 141:21–143:18; Ex. 10 at 242. |
| Honolulu, Hawaii | December–January 2020 | Tr. 143:7–143:18; Ex. 10 at 242–46. |
| Orlando, Florida | February 2021 | Tr. 143:25–147:9; Ex. 10 at 248. |
| Honolulu, Hawaii | March–April 2021 | Tr. 147:22–149:12; Ex. 10 at 252–56. |
| Orlando and Miami, Florida | June–July 2021 | Tr. 149:13–151:5; Ex. 10 at 264–69. |
| Nassau, Bahamas | June–July 2021 | Tr. 149:13–152:7; Ex. 10 at 264–68. |
| Orlando, Florida | August 2021 | Tr. 152:8–152:16; Ex. 10 at 272. |
| Orlando, Florida | September 2021 | Tr. 152:17–153:18; Ex. 10 at 276. |
| Nassau, Bahamas | October 2021 | Tr. 153:19–154:17; Ex. 10 at 281. |
| Miami, Florida | November 2021 | Tr. 154:18–154:25; Ex. 10 at 285. |
| Orlando, Florida | December 2021 | Tr. 155:1–155:22; Ex. 10 at 291. |

Def. Statement of Material Facts ¶ 31.

She would pay for these trips with her savings or credit cards. Tr. at 134:21–134:25. The Plaintiff explained that the thirteen trips within 18 months were meant to meet her daughter's emotional needs and, in some cases, to allow her to visit her sick grandfather in Orlando Florida. Def. Statement of Material Facts ¶ 31; Tr. 131:13–131:14, 143:7–145:23.

## DISCUSSION

Summary Judgment Standards

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).

"In ruling upon a summary judgment motion, the court's job is not to resolve disputed issues of fact, but to determine whether a genuine issue of fact exists." *Bethpage Fed. Credit Union v. Freidman (In re Kabbalah Taxi Inc.)*, Adv. Pro. No. 18-1016-cec, 2018 Bankr. LEXIS 2226, at *5 (Bankr. E.D.N.Y. 2018) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986)). "When viewing the evidence, the court must 'assess the record in the light most favorable to the non-movant and . . . draw all reasonable inferences in [the non-movant's] favor.'" *Weinstock v. Columbia Univ*., 224 F.3d 33, 41 (2d Cir. 2000) (quoting *Delaware & Hudson Ry. Co. v. Consol. Rail Corp*., 902 F.2d 174, 177 (2d Cir. 1990)).

A movant has the initial burden of establishing the absence of any genuine issue of material fact, which burden may be discharged by pointing out the absence of evidence supporting the non-moving party's case. *Celotex*, 477 U.S. at 323–25. Rule 56 "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id*. at 324. "The nonmoving party must show that there is more than a metaphysical doubt regarding a material fact and may not rely solely on self-serving conclusory statements." *Rosenman & Colin LLP v. Jarrell (In re Jarrell)*, 251 B.R. 448, 450–51 (Bankr. S.D.N.Y. 2000) (internal citations omitted). No genuine issue exists "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 249–50. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id*. (internal citations omitted).

Standards for Nondischargeability under Bankruptcy Code Section 523(a)(1)(C)

Bankruptcy Code section 523(a)(1)(C) provides that a chapter 7 discharge does not discharge an individual debtor from any debt "with respect to which the debtor made a fraudulent return or willfully attempted in any manner to evade or defeat such tax." 11 U.S.C. § 523. The creditor to whom the tax is owed bears the burden of proof on the issue of dischargeability, notwithstanding that the creditor may be the defendant in the adversary proceeding. *Bryen v. United States* (*In re Bryen)*, 433 B.R. 503, 515 (Bankr. E.D. Pa. 2010), *aff'd*, No. 10-CV-5030, 2011 WL 6092340 (E.D. Pa. Feb. 8, 2011), *aff'd*, 449 F. App'x 165 (3d Cir. 2011); *see Grogan v. Garner,* 498 U.S. 279, 286 (1991) (preponderance of the evidence standard applies to all objections to dischargeability under Bankruptcy Code section 523).

Bankruptcy Code section 523(a)(1)(C) is written in the disjunctive and the creditor to whom the tax is owed need only prove either a "fraudulent return" or "willful evasion." *See Epstein v. IRS (In re Epstein)*, 303 B.R. 280, 286-287 (Bankr. E.D.N.Y. 2004).

The "willful evasion" prong "consists of a conduct element (an attempt to evade or defeat taxes) and a mens rea requirement (willfulness)." *Tudisco v. United States (In re Tudisco)*, 183 F.3d 133, 136 (2d Cir. 1999); *Stamper v. United States (In re Gardner)*, 360 F.3d 551, 558 (6th Cir. 2004).

Respecting the conduct element, "it is evident that 'Congress did not define or limit the methods by which a willful attempt to defeat and evade might be accomplished and perhaps did not define lest its effort to do so result in some unexpected limitation.'" *United States v. Fegeley (In re Fegeley)*, 118 F.3d 979, 982–83 (3d Cir. 1997) ("[I]ntentional failure to file his tax returns, together with his failure to pay taxes when he had the resources to do so, was sufficient to prove debtor attempted to evade or defeat his tax liabilities.") quoting *Dalton v. IRS*, 77 F.3d 1297, 1300 (10th Cir.1996). "Nonpayment of taxes does not satisfy § 523(a)(1)(C)'s conduct requirement." *Tudisco*, 183 F.3d at 136. Rather, other circumstances, together with nonpayment is required to prove evasion. *Id*. at 137 (Debtor's submission of false affidavit to establish exemption from income tax withholding was conduct establishing evasion.); *In re Bryen*, 449 Fed. Appx. 165, 168 (3d Cir. 2011) (Conduct element satisfied by debtor's refusal to give up his lifestyle to pay his tax debt.); *In re Birkenstock*, 87 F.3d 947, 952 (7th Cir. 1996) (Debtor's failure to file tax returns and conveyance of all assets to trust while continuing to use and control assets was conduct establishing evasion.); *Bruner v. United States (In re Bruner)*, 55 F.3d 195, 200 (5th Cir. 1995) (Debtor's failure to pay taxes or file a tax return, "inordinate number of cash transactions," and the creation of a shell entity to conceal income and assets was conduct

establishing evasion.); *Toti v. United States (In re Toti)*, 24 F.3d 806, 809 (6th Cir. 1994) ("[F]ailure to file a tax return and failure to pay a tax fall within the definition in § 523(a)(1)(C) of a willful attempt to evade or defeat a tax liability."); *In re Gardner*, 360 F.3d at 559 (Debtor's use of nominee accounts created to conceal assets from IRS established evasion.); *United States v. Harold (In re Harold)*, 611 B.R. 835, 847 (Bankr. E.D. Mich. 2020) (Debtor's sale/leaseback of home to prevent IRS from enforcing its lien was conduct establishing evasion.); *Volpe v. IRS (In re Volpe)*, 377 B.R. 579, 588 (Bankr. N.D. Ohio 2007) (Debtor's transfer of title to house to mother to avoid tax levy was evasion.).

To prove the "willfulness" or mens rea requirement, the creditor must establish the debtor "(1) had a duty to pay the tax, (2) knew of that duty, and (3) voluntarily and intentionally violated the duty." *In re Wright*, 191 B.R. 291, 292 (Bankr. S.D.N.Y. 1995. Courts consider the totality of the circumstances to evaluate whether there was voluntary and intentional violation of the duty to pay a tax, including, (1) income, (2) concealment of assets or income, (3) failure to pay income tax liabilities, (4) failure to timely file income tax returns, and (5) use of considerable disposable income for nonessential personal purchases. *In re Epstein*, 303 B.R. at 286–91; *see Hochstein v. United States*, 900 F.2d 543, 548 (2d Cir. 1990) ("A person willfully fails to pay withholding taxes under section 6672 when he pays other creditors with knowledge that withholding taxes are due."); *Colish v. United States (In re Colish)*, 289 B.R. 523, 535–36 (Bankr. E.D.N.Y. 2002) (Willfulness prong satisfied where Debtor chose to pay his child's private school tuition and excess support obligations instead of paying taxes.); *In re Wright*, 191 B.R. at 293 (Intentional payment of non-essential creditors when debtor could have paid her tax obligations is sufficient evidence of mental state.).

Plaintiff Attempted to Evade or Defeat the Payment of Taxes.

The Debtor's failure to disclose the $93,000 of capital gains on her 2017 tax return is conduct constituting an attempt to evade the payment of taxes. The Plaintiff's claim that the omission was just a mistake is undermined by her inability to explain how she missed reporting a relatively large portion of her 2017 income.

Plaintiff's failure to pay any portion of the liability even though she had the money to do so establishes an attempt to evade or defeat the payment of taxes. From 2019 to 2021, Plaintiff had between $300,000 and $1,000,000 in her IRA. During that same period, Plaintiff spent $20,000 to start her bracelet business and thousands of dollars for travel. The Plaintiff's discretionary spending is significant relative to the debt owed to the IRS, which as of April 2019 was $31,851.00. Also, during that time, Plaintiff spent $7,000 to pay a credit card bill instead of paying the tax bill. Furthermore, in October 2021, the Plaintiff borrowed over $30,000 but used none of the loan proceeds to pay the tax liabilities. Based on the foregoing, the Court concludes the Plaintiff had the ability to pay the tax debt but chose not to.

The Debtor's failure to file timely her federal income taxes for 2016, 2017, 2018, 2019, 2020 and 2021 is conduct evidencing an attempt to evade paying taxes. Plaintiff claims she relied on Mr. Seltzer to file her tax returns. However, Plaintiff knew that Mr. Seltzer did not open his mail, suffered from debilitating depression, and stopped communicating with her. Despite Mr. Seltzer's known illness and history, the Plaintiff failed to verify that her tax returns had been filed. Further, Mr. Seltzer's email to the Plaintiff advised her the IRS could disallow the loss carrybacks and, if that were the case, the Plaintiff would be liable for the tax on the 2017 capital gains. Plaintiff disregarded Mr. Seltzer's warning.

Plaintiff's Conduct was Willful.

Although the intent element is distinct from the conduct element, Courts consider a taxpayer's failure to pay taxes when financially able to do as both conduct and evidence of willfulness. *Compare Fegeley*, 118 F.3d at 984 (Willfulness prong satisfied where debtor knew of his duty to pay taxes and voluntarily and intentionally violated that duty when debtor had the financial ability to discharge that duty.) *with In re Bryen*, 449 Fed. Appx. at 168 (Conduct element satisfied by debtor's refusal to give up his lifestyle to pay his tax debt.).

As set forth above, the Debtor had sufficient savings to pay the 2017 tax liability but paid none of the debt. Instead, she used her savings to start a business, day trade, travel, and pay credit card debt.

The Court believes the Plaintiff's explanation that the bracelet business and travel expenses were motivated by Plaintiff's love and concern for her daughter. However, the test for whether a taxpayer willfully evaded taxes is not whether the taxpayer believed she used disposable income for a purpose more righteous or rational than paying taxes.[2] Rather, at its core, the test is whether the taxpayer knew of the duty to pay taxes, had the ability to pay, and chose not to. *See In re Colish*, 289 B.R. at 535 ("If this Court were to permit every debtor to receive a discharge of his or her tax liabilities every time a debtor decided to spend income on discretionary personal expenses at the expense of tax obligations, claiming that he or she was faced with conflicting monetary obligations, then § 523(a)(1)(C) would be meaningless.").

---

[2] Plaintiff does not argue her serious and chronic illness prevented her from forming the intent to evade paying taxes. Rather, Plaintiff only argues the illness resulting from her childhood trauma caused her to devote time and money to travel with her daughter. Pl. Opp'n at ¶ 7.

## CONCLUSION

For the foregoing reasons, the Court finds that the Plaintiff willfully evaded her tax obligations for the 2017 calendar year.  Therefore, Defendant's claim is nondischargeable. Neither party requested the Court to fix the amount of the claim, therefore, the rights of all parties in interest are preserved respecting the amount of the claim.  Defendant is directed to submit a proposed order consistent with this decision within fourteen days of entry.



Dated: June 11, 2024
     Brooklyn, New York

Jil Mazer-Marino
United States Bankruptcy Judge

16